**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROBERT THOMAS, | : | Civil Action No. 06-0881 (MLC) |
| | : | |
| Petitioner, | : | |
| | : | **O P I N I O N** |
| v. | : | |
| | : | |
| WARDEN JAMES WYNDER, et al., | : | |
| | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
Robert Thomas, AM-3069
SCI- Dallas
1000 Follies Road
Dallas, PA 18612-0286

Counsel for Respondents
Karen A. Diaz
Office of the District Attorney
Bucks County Courthouse
55 E. Court Street, 4th Floor
Doylestown, PA 18901

**COOPER**, District Judge, Sitting by Designation

Petitioner, Robert Thomas, a prisoner currently confined at SCI Dallas in Dallas, Pennsylvania, has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The respondents are Warden James Wynder, the Attorney General of Pennsylvania, and the District Attorney of Bucks County. The petition will be denied, with prejudice.

## BACKGROUND

The relevant facts and procedural history are set forth in the opinion of the Superior Court of Pennsylvania, attached to Respondents' Answer as Exhibit M.[1]

---

[1] Under 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in

The relevant facts and procedural history of this case are as follows.  On March 2, 1979, Appellant pled guilty to the shooting death of Shoughn Richardson in a parking lot outside the Fairless Inn in Middletown Township, Pennsylvania.  On March 9, 1979, the trial court held a degree of guilt hearing[2] and found Appellant guilty of first degree murder.[3] On March 15, 1979, Appellant filed a post-verdict motion challenging, *inter alia*, the entry of his guilty plea.  The court denied this motion on February 12, 1980, and on March 17, 1980, the court sentenced Appellant to life imprisonment.  Thereafter, on March 20, 1980, Appellant filed a post-sentence motion challenging the entry of his guilty plea, which the court denied on August 9, 1980.  Appellant appealed to the Pennsylvania Supreme Court, asserting various claims pertaining to the alleged involuntariness of his guilty plea and the trial court's refusal to permit him to withdraw the plea.  On December 29, 1982, the Supreme Court affirmed the trial court's decisions regarding these matters.  The Court subsequently denied reargument on April 4, 1983.

Over the next fifteen years, Appellant filed three counseled petitions for collateral relief pursuant to the Post Conviction Hearing Act ("PCHA") and the PCRA.  After numerous continuances, changes of counsel, and evidentiary hearings, the PCRA court finally addressed the issues raised in these petitions in an order and opinion filed January 31, 2002.  The court explained that all of Appellant's issues, the majority of which challenged the entry of Appellant's guilty plea, had been previously litigated in his direct appeal to the Supreme Court nearly twenty years earlier.  Thus, the court denied Appellant's petitions for collateral relief.  Appellant appealed to this Court, which quashed the appeal due to its untimeliness.  The Pennsylvania Supreme Court subsequently denied Appellant's petition for allowance of appeal on May 15, 2003.

---

custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

[2]   See 42 Pa.C.S. §§ 9541-9546.

[3]   See 18 Pa.C.S. § 2502(a).

2

See Op. of Superior Court of Pa., dated 7-15-04, at 1-3, Exhibit M to Respondents' Answer (internal citations omitted).

The Superior Court continued to note that the case before it, the PCRA petition filed on September 3, 2003 in the PCRA court, was untimely, pursuant to 42 Pa.C.S. § 9545, which states that PCRA petitions must be filed within one year of the date the judgment of sentence becomes final.  Under Pennsylvania law, a judgment of sentence becomes final at the conclusion of direct review or at the expiration of time seeking such review.  See 42 Pa.C.S. § 9545(b)(3).  The Superior Court noted that Petitioner's judgment of sentence became final on or about July 3, 1983, ninety days after the Supreme Court of Pennsylvania denied reargument on April 4, 1983.  See Com. v. Lark, 560 Pa. 487, 746 A.2d 585 (2000) (stating that after Pennsylvania Supreme Court denies appellant's petition for allowance of appeal, appellant's judgment of sentence becomes final ninety days after time for seeking discretionary review with United States Supreme Court has expired).  The petition before the Superior Court was filed on September 3, 2003, more than 20 years after his judgment of sentence became final.  Petitioner did not meet any of the exceptions to the timeliness requirement, as set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii).

After the Superior Court denied the appeal as untimely on July 15, 2004, Petitioner's request for reargument was denied on

September 23, 2004.  On February 16, 2005, the Pennsylvania Supreme Court denied Petitioner's allowance of appeal.  See Respondents' Exhibit M.

Petitioner filed this habeas petition in the United States District Court for the Middle District of Pennsylvania on February 17, 2006, as he was confined in that District at the State Correctional Institution in Dallas, Pennsylvania.  However, by Order dated February 21, 2006, the Middle District transferred the case to the Eastern District of Pennsylvania, since the trial court, records, witnesses and counsel were located in that District.  By Order filed on March 8, 2006, the Eastern District informed Petitioner of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and ordered Petitioner to complete the standard form § 2254 Petition.

By Order filed on May 30, 2006, the Honorable Anthony J. Scirica, Chief Judge of the United States Court of Appeals for the Third Circuit, designated the undersigned to handle this matter, pursuant to the provisions of 28 U.S.C. § 292(b) and in the public interest.

On December 11, 2006, this Court ordered (1) the Eastern District of Pennsylvania to reopen the matter, (2) service of the petition on Respondents, and (3) Respondents to answer the petition.  On January 25, 2007, Respondents answered the petition and submitted the state court record of proceedings.  On February

4

28, 2007, Petitioner submitted a reply to the answer, which included exhibits supplementing those submitted by Respondents.

**DISCUSSION**

**A.   Statute of Limitations**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

The limitations period is applied on a claim-by-claim basis.  <u>See Fielder v. Verner</u>, 379 F.3d 113 (3d Cir. 2004), <u>cert. denied</u>, 543 U.S. 1067 (2005); <u>Sweger v. Chesney</u>, 294 F.3d 506 (3d Cir. 2002).

For most claims, evaluation of the timeliness of a § 2254 petition requires a determination of, first, when the pertinent judgment became "final," and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."

A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court. See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

Where a conviction became final prior to April 24, 1996, the effective date of § 2244(d), a state prisoner has a one-year grace period after that effective date to file a § 2254 petition, barring statutory or equitable tolling. See Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

To statutorily toll the limitations period, a state petition for post-conviction relief must be "properly filed."

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record. And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. In some

> jurisdictions the filing requirements also include, for
> example, preconditions imposed on particular abusive
> filers, or on all filers generally.  But in common
> usage, the question whether an application has been
> "properly filed" is quite separate from the question
> whether the claims contained in the application are
> meritorious and free of procedural bar.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (citations and footnote

omitted) (finding petition was not "[im]properly filed" merely

because it presented claims that were procedurally barred under

New York law on grounds that they were previously determined on

merits upon appeal from judgment of conviction or that they could

have been raised on direct appeal but were not).

Where a state court has rejected a petition for post-

conviction relief as untimely, however, it was not "properly

filed" and the petitioner is not entitled to statutory tolling

under § 2244(d)(2).  See Pace v. Diguglielmo, 544 U.S. 408

(2005).  This is so even where, in the alternative, the state

court addresses the merits of the petition in addition to finding

it untimely.  See Carey v. Saffold, 536 U.S. 214, 225-26 (2002).

An application for state post-conviction relief is

considered "pending" within the meaning of § 2244(d)(2), and the

limitations period is statutorily tolled from the time it is

"properly filed," during the period between a lower state court's

decision and the filing of a notice of appeal to a higher court,

Carey, 536 U.S. at 219, and through the time in which an appeal

could be filed, even if the appeal is not filed, Swartz, 204 F.3d

at 420-24.  However, the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition, or the time during which a state prisoner's petition for certiorari is pending in the U.S. Supreme Court, does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2).  See Lawrence v. Florida, 127 S. Ct. 1079 (2007); Stokes v. Dist. Att'y, 247 F.3d 539, 542 (3d Cir. 2001).

The limitations period of § 2244(d) is also subject to equitable tolling.  See Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Miller v. N.J. State Dep't of Corrs., 145 F.3d 616, 618 (3d Cir. 1998). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 416-17.  Equitable tolling is appropriate when "principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition *and* the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005). Mere excusable neglect is not sufficient.  See id.; Miller, 145 F.3d at 618-19; Jones, 195 F.3d at 159.

Extraordinary circumstances permitting equitable tolling have been found where the petitioner (1) has been actively misled, (2) has been prevented from asserting rights in some extraordinary way, (3) timely asserted rights in the wrong forum, see Jones, 195 F.3d at 159, or (4) was misled by the court as to the steps to be taken to preserve a claim.  See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir.), cert. denied, DiGuglielmo v. Brinson, 126 S. Ct. 473 (2005).[4]  Even where extraordinary circumstances exist, however, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003).

Finally, "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  Burns, 134 F.3d at 113.

Timeliness is determined pursuant to § 2244(d)(1)(A), from the date on which the judgment of conviction became final.  Thus, here, where Petitioner's conviction became final prior to the

---

[4]  In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes are not the extraordinary circumstances necessary to establish equitable tolling.  See Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002); Fahy, 240 F.3d at 244.

effective date of § 2244, Petitioner had until April 24, 1997, to file his § 2254 petition, unless the time for filing was statutorily or equitably tolled.

On April 24, 1997, Petitioner's first state PCRA petition was pending.  The PCRA court issued its final order denying the petition on January 31, 2002.  Petitioner appealed the denial, but on December 31, 2002, the appeal was quashed as untimely by the Pennsylvania Superior Court.  Petitioner's application for reconsideration was denied on January 9, 2003, and on May 15, 2003, Petitioner's petition for allowance of appeal to the Pennsylvania Supreme Court was denied.  Thus, the limitations period was tolled from April 24, 1997, until May 15, 2003, when his PCRA petition was rejected by the Pennsylvania Supreme Court. Thereafter, the limitations period ran from May 15, 2003.

Petitioner filed a second PCRA petition on September 3, 2003.  However, the limitations period will not be tolled for that second PCRA petition because, ultimately, the state courts found that Petitioner's second PCRA petition was untimely. Accordingly, it was not "properly filed" and did not statutorily toll the limitations period.

Petitioner's habeas petition was not filed in the Middle District of Pennsylvania until February 2006, more than three years after May 15, 2003, when his first PCRA petition was denied by the Pennsylvania courts.  Thus, the petition is untimely.

Further, the Court finds no extraordinary circumstances alleged to warrant equitable tolling of the limitations period. Petitioner appears to have disregarded or miscalculated that the limitations period would have been running before he filed his second and subsequent PCR petitions.  Miscalculation of the remaining time on a limitations period does not constitute extraordinary circumstances to permit equitable tolling.  <u>See</u> <u>Fahy</u>, 240 F.3d at 244; <u>see also</u> <u>Johnson v. Hendricks</u>, 314 F.3d 159, 161, 163 (3d Cir. 2002).  Moreover, even if Petitioner was unaware that the limitations period expired on April 24, 1997 (absent statutory tolling), ignorance of the law, even for an incarcerated <u>pro</u> <u>se</u> petitioner, generally does not excuse prompt filing.  <u>See</u> <u>Fisher v. Johnson</u>, 174 F.3d 710, 714 (5th Cir. 1999).  Courts have been loathe to excuse late filings simply because a <u>pro</u> <u>se</u> prisoner misreads the law.  <u>See</u> <u>Delaney v. Matesanz</u>, 264 F.3d 7, 15 (1st Cir. 2001); <u>see</u> <u>also</u> <u>Jones</u>, 195 F.3d at 159-60.

Finally, Petitioner filed two previous § 2254 petitions, which were dismissed, without prejudice, for failure to exhaust. The decisions in <u>Pliler v. Ford</u>, 542 U.S. 225 (2004), and <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), are instructive for finding that despite these prior petitions, the instant petition is untimely. In <u>Pliler</u>, the petitioner filed his first § 2254 petition before the statute of limitations expired.  After the limitations period

11

expired, the district court determined that the petition was mixed, that is, contained exhausted and unexhausted claims.  The district court dismissed the petition without prejudice as unexhausted and the petitioner returned to state court, which summarily dismissed.  The petitioner re-filed his § 2254 petition and the district court dismissed the petition with prejudice as untimely under the one-year statute of limitations.  The Ninth Circuit granted a certificate of appealability and held that the petition was timely because the filing date related back to the original petition.  The Ninth Circuit held that if a pro se petitioner files a mixed petition, the district court errs by dismissing the petition without prejudice, without advising the petitioner of the option for a stay and without advising the petitioner that his federal claims would be time-barred, absent equitable tolling, if he opted to dismiss the petition without prejudice and return to state court to exhaust his claims.

The Supreme Court reversed the Ninth Circuit, holding that federal district judges are not required to warn pro se petitioners about the time-bar or advise them of the option of a stay before dismissing a mixed petition without prejudice. Pliler, 542 U.S. at 231.  The Court expressly rejected the petitioner's argument that the advisements are necessary to ensure that pro se petitioners make informed decisions and do not unknowingly forfeit their exhausted claims.

12

> Respondent reads Rose as mandating that a prisoner be
> given *the choice* of returning to state court to exhaust
> his claims or amending or resubmitting the habeas
> petition to present only exhausted claims to the
> district court.  But Rose requires only that a district
> court must dismiss . . . mixed petitions, leaving the
> prisoner with the choice described above.  In other
> words, Rose requires dismissal of mixed petitions,
> which, as a practical matter, means that the prisoner
> must follow one of the two paths outlined in Rose if he
> wants to proceed with his federal habeas petition.  But
> nothing in Rose requires that both of these options be
> equally attractive, much less suggests that district
> judges give specific advisements as to the availability
> and wisdom of these options.

Pliler, 542 U.S. at 233 (cites and quotes omitted).

In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court
vacated a judgment of the Eighth Circuit holding that a district
court has no authority to stay a mixed petition to allow the
petitioner to present his unexhausted claims to the state court
and then to return to federal court.  Noting that "the filing of
a petition for habeas corpus in federal court does not toll the
statute of limitations," id. at 1533, the Court observed that

> If a petitioner files a timely but mixed petition in
> federal district court, and the district court
> dismisses it under Lundy after the limitations period
> has expired, this will likely mean the termination of
> any federal review.  For example, if the District Court
> in this case had dismissed the petition because it
> contained unexhausted claims, AEDPA's 1-year statute of
> limitations would have barred Rhines from returning to
> federal court after exhausting the previously
> unexhausted claims in state court.

Id. at 275.

The Rhines Court held that a district court may issue stays
only where a stay would be compatible with AEDPA's purposes.

See id. at 276.  The Court determined that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.  In such circumstances, the district court should stay, rather than dismiss, the mixed petition."  Id. at 278.

In light of Pliler and Rhines, Petitioner is not entitled to equitable tolling of the limitations period that would render his petition timely.  Accordingly, the Court dismisses the petition as time-barred under 28 U.S.C. § 2244(d)(1).

**B.   Merits of Petition**

Alternatively, the Court notes that the instant Petition does not have merit.  Here, Petitioner asserts three claims:

>    (1)   The conviction was obtained and the sentence was imposed in violation of the Sixth Amendment right to effective assistance of counsel.
>    (2)   Petitioner was deprived of due process rights in violation of the Fourteenth Amendment of the Constitution, concerning nine unreviewed issues still undecided in the Appellate Courts of Pennsylvania.
>    (3)   The final Pennsylvania Supreme Court decision and conclusion was determined contrary to case law and the facts of the record, and resulted in a decision that was based on an unreasonable determination in light of the evidence presented in the state court proceeding.

See Petition, § 12.  However, in his Memorandum of Law in Support of his Petition, he asks that the Court allow him to amend his petition to include review of the appealed issues from the denial

14

of the PCRA petition decided on January 31, 2002.  (<u>See</u>

Memorandum, p. 11).

The claims raised in the first PCRA petition, denied on

January, 31, 2002, include the following claims by Petitioner:

(1)  Whether the plea was invalid and illegal due to trial
     court's participation in the plea negotiations and was
     trial counsel ineffective for failing to raise this
     issue on direct appeal?

(2)  Whether plea was not knowing and intelligently entered
     absent any factual basis and was trial counsel
     ineffective for failing to raise this issue on direct
     appeal?

(3)  Whether defendant was not properly informed of the
     permissible range of sentence, a mandatory requirement
     for a valid plea and was trial counsel ineffective for
     not raising this issue on direct appeal?

(4)  Whether defendant was deprived of favorable evidence
     and due process at the degree of guilt hearing due to
     ineffective trial counsel's failure at said hearing?

(5)  Whether trial court erred by failing to accept plea and
     was trial counsel ineffective for failing to raise this
     issue on direct appeal?

(6)  Whether defendant was unable to enter a knowing,
     intelligent and understandable plea while under the
     influence of mis-prescribed psychotic medication and
     was trial counsel ineffective for failing to raise this
     issue at the plea and on direct appeal?

(7)  Whether plea was invalid absent any admission by
     defendant to any unlawful act and did trial court err
     in determining a degree of guilt of First Degree Murder
     without the defendant's admission to the conduct which
     would constitute first degree murder?

(8)  Whether demand for rehearing with stipulation degree of
     guilt raise no higher than Third Degree Murder is
     proper in order to conform with established plea
     agreement and was trial counsel ineffective for failing
     to stipulate to degree of guilt which conformed with
     the prior plea agreement and offer from the
     Commonwealth?

(9)  Whether improperly determined sentence of life for
     First Degree Murder should be vacated with remand for

re-sentence of the court's recommended sentence of 9 to 20 years as an alternative to withdrawing the plea?

See Petitioner's PCRA petition denied on January 31, 2002.[5]

## 1.   Standard for Habeas Review

Under 28 U.S.C. § 2254, as amended by 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); Dickerson v. Vaughn , 90 F.3d 87, 90 (3d Cir. 1996).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  It reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The

---

[5]  To the extent that Petitioner has not raised the claims before the state courts, this Court finds that they are without merit, and will excuse the exhaustion requirement.  See 28 U.S.C. § 2254(b)(1), (2).

16

Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

17

As to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. Dec. 18, 2001).  Also, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  This presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan, 256 F.3d at 196.  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690, at *12.

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

18

(1972).  A <u>pro se</u> habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  <u>See Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989).

**2.  Claims Regarding Guilty Plea (Grounds 1-3 and 5-8).**

The transcript of the guilty plea in question demonstrates that the following colloquy occurred:

> THE COURT: Your name is Robert W. Thomas; is that correct?
>
> MR. THOMAS: Yes.
>
> THE COURT: You understand that you are charged by the Commonwealth of Pennsylvania as follows: The Commonwealth of Pennsylvania vs. Robert W. Thomas, "The District Attorney of Bucks County by this information charges that, on or about the nineteenth day of August, 1978 in said County, one Robert W. Thomas, did intentionally kill Roger Shaughn Richardson, did feloniously and unlawfully kill and slay the deceased, one Roger Shaughn Richardson, all of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania."
>
> You are aware that you are so charged; are you not?
>
> MR. THOMAS: Yes, sir.
>
> THE COURT: And, further, it has been explained to you that the charge intended here is what is called criminal homicide which includes the charge of first degree murder; correct?
>
> MR. THOMAS: Yes.
>
> THE COURT: It also includes the charges of third degree murder, voluntary manslaughter and involuntary manslaughter.
>
> As I understand it, you are pleading guilty to the charge of criminal homicide; correct?
>
> MR. THOMAS: Yes, sir.
>
> THE COURT: Now, you have heard the Deputy District Attorney state that the Commonwealth has evidence to

prove that on August 19, 1978, you shot and killed Robert Shaughn Richardson in Fairless Hills, Bucks County, Pennsylvania.

Did you do so?

MR. THOMAS: Yes, sir.

THE COURT: It is my duty to advise you in open Court of the rights of a person pleading guilty to a criminal charge and the procedures involved.

A person charged with a crime has an absolute right to plead not guilty and to be tried on a plea of not guilty either by a jury, which means twelve persons drawn from the community, in this instance, Bucks County, all of whom has to agree in order to return a verdict of guilty or not guilty and part of the right of a trial by jury is to help select the particular jurors for the case with your attorney.

You may also choose, with the consent of the Commonwealth, to give up the right to a trial by jury and to be tried by a judge alone, in which case the judge decides the verdicts himself.  As you know, in this case, the Commonwealth did not so consent.

When you plead guilty to a criminal homicide you admit that you did the killing and the degree of guilt in this case, whether it be first degree murder, third degree murder, voluntary manslaughter or involuntary manslaughter, is fixed by the judge after hearing all of the evidence.

When you plead guilty you give up the right ever to come back and say that there was any mistake made or defect in these proceedings up to this point.

Your only right of appeal from a guilty plea to criminal homicide is, first, that the degree of guilt was not supported by the evidence; next, that the Court lacked jurisdiction, which means the power to hear and decide such a case and impose a sentence, if there is a conviction; next, that the sentence exceeded the lawful maximum.

I advise you that the mandatory sentence for first degree murder in this particular case is life imprisonment; for third degree murder, ten years to twenty years incarceration plus a very substantial fine; for voluntary manslaughter it is five to ten years and a substantial fine.

20

And, lastly, the right of appeal is that your plea of guilty was not voluntarily entered.

The reason that I am going over these rights with you and explaining them to you at this time in open Court is to ascertain that this is a voluntary plea on your part, that is to say, that it is knowingly and intelligently entered by you and that it is done voluntarily in the sense that it is your own free choice.

Your right of appeal is to the Supreme Court of Pennsylvania.  It must be filed within thirty days of sentence.

You have a right after the entry of a plea of guilty within ten days of sentence- excuse me, within ten days of the plea to file a petition to set aside the sentence, set aside the plea on the grounds of illegality or invalidity.

If the petition is denied, the time for appeal runs from the date of denial.

You are entitled to be represented by an attorney in all of these proceedings whether you plead guilty or not guilty and if you cannot afford an attorney one is appointed to represent you free of charge, and that includes any proceedings after this by way of appeal.

So on the question of whether or not you are pleading guilty voluntarily, Mr. Thomas, let me ask you this: Whose decision is it to plead guilty here?

MR. THOMAS: Mine, Your Honor.

THE COURT: It is solely your decision; is that right?

MR. THOMAS: Yes, sir.

THE COURT: The other day, you will recall, during the jury selection, I asked you and your attorneys questions regarding what is called your competency to proceed.

I understood that you were taking medication at that time.  Are you still taking medication?

MR. THOMAS: Yes, sir.

THE COURT: Do you still believe that you understand and appreciate the nature of these proceedings?

MR. THOMAS: Yes, sir.

THE COURT: You understand what is going on in the Courtroom; is that right?

21

MR. THOMAS: Yes, sir.

THE COURT: Do you believe that you are able to cooperate with your attorneys in this case?

MR. THOMAS: Yes, sir.

THE COURT: Let me ask Mr. Thomas's counsel whether they likewise agree?

MR. GILMAN: Yes, sir.

THE COURT: Next, do you believe that you do know what is involved in pleading guilty to this charge based on your discussions with your attorneys?

MR. THOMAS: Yes, sir.

THE COURT: Have you thought about it and decided that this is the right and best thing for you to do, that is to say, to plead guilty?

MR. THOMAS: Yes, sir.

THE COURT: Have you thought about it for some time; have you not?

MR. THOMAS: Yes, sir.

THE COURT: You understand that every defendant who comes into Court in a criminal case is presumed to be innocent and remains so in a plea of not guilty until the Commonwealth, acting through the District Attorney, has established guilt beyond a reasonable doubt, or if he pleads guilty, upon the acceptance of his guilty plea; do you understand that?

MR. THOMAS: Yes, sir.

THE COURT: Is the decision to plead guilty voluntary, that is to say, completely your own free choice; no one has pressed you to plead guilty, there are no promises of any kind, any inducements from any person to plead guilty; is that correct?

MR. THOMAS: Yes, sir.

THE COURT: Your age is what, please?

MR. THOMAS: Forty.

THE COURT: How far have you gone in school?

MR. THOMAS: I went to high school and graduated.  I have a year and a half of college.

THE COURT: You read, write and understand English; correct?

MR. THOMAS: Yes, sir.

THE COURT: You are not at the present time under the influence of any alcohol or drugs other than the medication you have referred to; is that correct?

MR. THOMAS: Yes, sir.

THE COURT: Have you ever been treated for anything that would prevent you from understanding what is going on in this Courtroom right now?

MR. THOMAS: No, sir.

THE COURT: Do you have any questions about pleading guilty?

MR. THOMAS: No, sir.

See Respondents' Exhibit A, Transcript of Guilty Plea, at pp. 8-15. The Court continued for five additional pages of transcript to describe to Petitioner the Commonwealth's burden, the elements and nature of the crime to which Petitioner plead guilty, and distinguished the different types of murder and manslaughter, and asked Petitioner again if he had any questions, and whether he was satisfied with his attorneys. The Court then proceeded to hear the Commonwealth's case with regard to degree of guilt.

Petitioner sought to withdraw his guilty plea before sentencing. After holding a hearing wherein Petitioner and Petitioner's trial counsel testified, the trial court issued a written opinion, which stated, in relevant part:

The defendant's contention is that his plea of guilty was not knowingly and intelligently entered, and that he should have been permitted to withdraw his guilty plea before sentencing. He asserts that he never intended to plead guilty inasmuch as he believed that he acted in self-defense and, therefore, did not commit a crime; that the trial court failed to inform him of the defense of self-defense or to ascertain the factual basis for

23

the guilty plea; and that it erroneously instructed him on the law as to the use of a deadly weapon.

* * *

We reject defendant's claim that although he pleaded guilty he still thought he could be found not guilty. There is no good basis for his having entertained that belief, and it is in conflict with and contradicted by the advice that his attorney testified to having given him.  It is not consistent with the guilty plea colloquy.  He was advised, plainly, that his guilt would be fixed at one of the two degrees of murder in question, or one of the forms of manslaughter, depending on the evidence.

As to advising the defendant on self-defense, the guilty plea judge is required to do so only where the defense is reasonably raised by the facts of the case. It is well settled that "where the defendant, though pleading guilty, testifies to what amounts to a complete defense to the crime charged, his guilty plea cannot be a knowing and intelligent act and should not be accepted."  This stricture will not apply merely because the defendant believes that he has a good defense although in law and fact he has none.  In that instance, it could not be said that his claim of innocence is incompatible with a plea of guilty.

In the present case, the defendant was not advised on the record as to the nature of the defense of self-defense or that pleading guilty constituted an abandonment of the defense.  However, at the time of the colloquy, no exculpatory facts had been adduced to suggest that the defendant believed the killing was excusable. ...

* * *

In these circumstances, we found that permitting the withdrawal of defendant's guilty plea was not dictated by considerations of fairness and justice and that it would cause the Commonwealth substantial prejudice.

See Respondents' Exhibit F, Opinion and Order, at pp. 5-13

(internal citations omitted).  The Order was affirmed by the

Supreme Court of Pennsylvania.

Due process requires that guilty pleas be entered intelligently and voluntarily.  See Boykin v. Alabama, 395 U.S. 238, 242 (1969).  A plea does not qualify as intelligent "unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).  Where, prior to pleading guilty, a defendant is provided with a copy of the indictment which recites the charge against him, "[s]uch circumstances, standing alone, give rise to a presumption that the defendant was informed of the nature of the charge against him."  Id. (citation omitted).  A guilty plea entered by one fully aware of the direct consequences of the plea is voluntary "unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."  Brady v. United States, 397 U.S. 742, 755 (1970) (cites and quotes omitted).  The only direct consequences relevant to evaluating the voluntariness of a guilty plea are the maximum prison term and fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996), superseded by statute on other grounds as stated in Dickerson v. Vaughn, 90 F.3d 87 (3d Cir. 1996).

The above standards govern the validity of a guilty plea
even when a criminal defendant protests his innocence despite his
entry of a guilty plea.

> [W]hile most pleas of guilty consist of both a waiver
> of trial and an express admission of guilt, the latter
> element is not a constitutional requisite to the
> imposition of criminal penalty [when, as in the instant
> case,] a defendant intelligently concludes that his
> interests require entry of a guilty plea and the record
> before the judge contains strong evidence of actual
> guilt.

North Carolina v. Alford, 400 U.S. 25, 37 (1970).  Also,
"[b]ecause of the importance of protecting the innocent and of
insuring that guilty pleas are a product of free and intelligent
choice, various state and federal court decisions properly
caution that pleas coupled with claims of innocence should not be
accepted unless there is a factual basis for the plea and until
the judge taking the plea has inquired into and sought to resolve
the conflict between the waiver of trial and the claim of
innocence."  Id. at 38 n.10 (citations omitted).  "[T]here must
always exist some factual basis for a conclusion of guilt before
a court can accept an Alford plea."  United States v. Mackins,
218 F.3d 263, 268 (3d Cir. 2000).

Whether a guilty plea was entered intelligently and
voluntarily is primarily a question of law subject to de novo
review; to the extent that determination depends upon findings of
historical fact by the state court, however, those factual
findings carry a presumption of correctness.  See Marshall v.

26

Lonberger, 459 U.S. 422, 431-32 (1983); Candelaria v. Lemaster, 201 F.3d 447 (10th Cir. 1999) (table, text in Westlaw); Hunt v. Dailey, 54 F.Supp.2d 1038, 1041-42 (D. Kan. 1999) (collecting cases).

Most courts look to the totality of events and circumstances preceding entry of a guilty plea in determining whether the defendant was informed and understood the nature of the charge. Some of the factors to be considered include:  (1) the complexity of the charge; (2) defendant's age; (3) defendant's record; (4) defendant's intelligence and education; (5) defendant's ability to comprehend what was being said to him; and (6) whether he was represented by counsel.  See United States v. Cefaratti, 221 F.3d 502, 508 (3d Cir. 2000); United States v. Fernandez, 205 F.3d 1020, 1025 (7th Cir. 2000); United States v. Mosley, 173 F.3d 1318, 1322-23 (11th Cir. 1999); United States v. Marks, 38 F.3d 1009, 1012 (8th Cir. 1994).

Here, the plea judge accepted the plea and the colloquy evidences that Petitioner understood the charges against him, the rights he was giving up by pleading guilty, the sentencing consequences of pleading guilty, and noted that he was not coerced or induced into making the plea.  It also states that he was satisfied with his attorney's advice.

Based on the record, it is clear that Petitioner understood the nature and elements of the charges against him.  The guilty

plea to the general crime of homicide, was entered into voluntarily and intelligently.  There is no reason for this Court to disturb the state courts' findings that the plea was voluntary.  Petitioner is not entitled to relief on this claim.

Further, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Thus, Petitioner's claims that the plea was not knowing and intelligently entered absent any factual basis; the plea was invalid and illegal due to trial court's participation in the plea negotiations; he was not properly informed of the permissible range of sentences; he was unable to enter a knowing, intelligent and understandable plea while under the influence of mis-prescribed psychotic medication; and the plea was invalid absent any admission by him to any unlawful act, are denied.

### 3.  Claims Regarding Ineffective Assistance of Counsel (Grounds 1-6, 8).

Petitioner argues that counsel was ineffective for failing to raise the following issues at trial and on appeal: that the plea was invalid due to the trial court's participation in plea

negotiations; for failing to stipulate to a degree of guilt hearing that conformed with the plea agreement; for failing to raise that there was an insufficient factual basis at plea; for failing to raise that he was not advised of sentencing consequences; for failing to raise that the trial court did not accept the plea; for failing to raise that the plea was involuntary due to the influence of medication; and for failing to raise that he did not admit to facts constituting first degree murder.

To establish that trial counsel is ineffective, a petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz , 105 N.J. 42, 60-61 (1997) (quoting Strickland, 466 U.S. at 694). "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. Furthermore:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy

for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

The Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel need not advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

30

Moreover, to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999).

The Strickland standards also apply to guilty pleas alleged to be the result of ineffective assistance of counsel. See Hill v. Lockhart, 474 U.S. 52 (1985). To prevail on an ineffective assistance claim in a guilty plea context, a petitioner must show: (1) counsel's performance relating to the plea was deficient; (2) the deficient performance prejudiced Petitioner's case, because there was a reasonable probability that but for counsel's errors, the petitioner would not have pled guilty, and would have gone to trial. See Strickland, 466 U.S. at 687-88; Hill, 474 U.S. at 59.

Petitioner raised the issues of ineffective counsel in his post-verdict motions and first PCRA petition. The state court took testimony from Petitioner's counsel during both hearings. Petitioner also testified at both hearings. It is clear from the transcripts, that Petitioner was advised by counsel that pleading guilty to criminal homicide and having a degree of guilt hearing before the trial judge, instead of a jury, was a strategy to receive a more favorable verdict in the degree of guilt hearing.

31

Petitioner and counsel strategized that the trial judge would be more willing to find his degree of guilt at something less than first-degree murder.  But at the plea itself, Petitioner was advised by the trial court, and stated that he understood that he was pleading guilty to the general crime of homicide and that he could be found guilty of first degree murder, which carried a life sentence.

After a thorough review of the state court record, this Court agrees that Petitioner has not demonstrated that trial counsel was ineffective under the <u>Strickland</u> standard.  With regard to the plea, Petitioner admitted that his decision to plea was largely based upon his hope that at his degree of guilt hearing the judge would find him guilty of a lesser degree of homicide and impose a shorter sentence.  Thus, counsel's advice to Petitioner to accept the plea was not deficient, but rather, constituted sound strategy for purposes of sentencing.  As for the appeal, Petitioner has not demonstrated that non-frivolous claims were overlooked by appellate counsel, or that the conviction may have been reversed on appeal had appellate counsel made additional or different arguments.

The record reveals that Petitioner was aware of the consequences of the plea agreement, and that he was satisfied with his attorney's advice.  Upon taking the plea from Petitioner, the court warned Petitioner that degree of guilt had yet to be

determined and he was subject to a sentence of up to life imprisonment.  His attorney did not act deficiently in strategizing to try and obtain the best possible sentence for Petitioner.  Petitioner, who was somewhat educated and understood the proceedings, was aware of the consequences of pleading guilty.

Petitioner also has not demonstrated that the results of his degree of guilt hearing would have been different had his attorney acted some other way in representing him.  A review of the record reveals that the attorney presented 16 witnesses at the hearing, including Petitioner, and introduced 10 pieces of documentary evidence in attempting persuade the judge to find Petitioner guilty of a lesser degree of homicide.  There was sufficient evidence presented for the judge to examine and determine Petitioner's degree of guilt.  The mere fact that the judge did not decide in Petitioner's favor, does not render his attorney's performance deficient.

Petitioner has demonstrated neither that counsel's performance was deficient, nor that the results of the trial would have been different.  As the state courts applied the correct Strickland standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, are therefore denied.

**4.    Claim Regarding Sentencing (Ground 9).**

Petitioner argues that his sentence should be vacated in lieu of withdrawing the plea, and he should be resentenced to 9 to 20 years.

Petitioner's claim is without merit.  A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." See Grecco v. O'Lone, 661 F.Supp. 408, 415 (D.N.J. 1987).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Here, the sentence of life imprisonment for a first degree murder conviction does not separately violate a federal constitutional limitation. Petitioner is not entitled to relief on this ground.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find this Court's procedural ruling debatable.  No certificate of appealability shall issue.

**CONCLUSION**

For the reasons set forth above, the Petition will be denied with prejudice.  An appropriate order follows.


    s/ Mary L. Cooper
_____
**MARY L. COOPER**
United States District Judge
District of New Jersey
Sitting by Designation

Dated:  August 9, 2007

36